# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| In re:<br><br>GORDON PROPERTIES, LLC, and<br>CONDOMINIUM SERVICES, INC.,<br><br>    Debtors. | Case Nos.  09-18086 and 10-10581-RGM<br>(Chapter 11)<br>(Administratively Consolidated) |
| FIRST OWNERS' ASSOCIATION OF<br>FORTY SIX HUNDRED CONDOMINIUM,<br>INC.,<br><br>    Movant,<br><br>vs.<br><br>GORDON PROPERTIES, LLC, and<br>CONDOMINIUM SERVICES, INC.,<br><br>    Respondents. | Contested Matter<br>Motion for Substantive Consolidation<br>(Docket Entry 74) |

## MEMORANDUM OPINION

This case is before the court on the motion of First Owners' Association of Forty Six Hundred Condominium, Inc., a condominium unit owner's association, to substantively consolidate two chapter 11 bankruptcy cases, Gordon Properties, LLC, and Condominium Services, Inc. The debtors oppose the motion. The two cases were previously administratively consolidated.

## The Two Debtors

Gordon Properties filed its chapter 11 petition on October 2, 2009. It scheduled four creditors, two secured and two unsecured. The condominium association, which Gordon Properties scheduled as a disputed secured creditor, filed a proof of claim asserting a secured claim for past due

1

condominium fees of $315,673.36. The two unsecured creditors scheduled were both scheduled as disputed. One filed an unsecured claim for $237,755.40. According to its schedules, even if all the claims are allowed, Gordon Properties has net equity of about $9,600,000.

Condominium Services filed its chapter 11 petition on January 26, 2010. It scheduled one creditor, the condominium association, with a disputed claim of $436,802.00. The association filed a proof of claim asserting a claim of $453,533.12. A second proof of claim was filed by the Internal Revenue Service for $1,955.45. According to its schedules, if both claims are allowed, it has a net deficit of about $426,900. CSI is wholly owned by Gordon Properties.

CSI and Gordon Properties trace their origins to Bryan Gordon. Shortly before his death in 1979, Mr. Gordon organized CSI as a property management company. After his death, it was operated by his estate until about ten years ago when it became a wholly owned subsidiary of Gordon Properties. Mr. Gordon also owned many condominium units at the condominium. Upon his death they were devised to a trust for the benefit of his children and grandchildren. About twelve years ago, the trust terminated, Gordon Properties was organized and the condominium units were transferred to it. Gordon Properties is a limited liability company owned by Mr. Gordon's four grandchildren. CSI became its wholly owned subsidiary about two years after Gordon Properties was organized.

CSI managed the condominium for almost 27 years, until September 2006. When it filed its petition, it managed 18 other condominium associations. *See* Schedule G, Executory Contracts. It has its own employees who perform the day-to-day work of the company. It also manages Gordon Properties' rental units.

One of Gordon Properties' condominium units is used as a restaurant. The condominium itself is a mixed use condominium consisting of both residential and commercial units with a total of about 400 units. Two of the commercial units are designated street-front commercial units, one of which is the restaurant unit.

Gordon Properties is in the business of renting its condominium units. Its rental activities are managed by CSI. CSI is in the business of property management. Bryan Sells, who is a full-time practicing attorney, is the managing member of Gordon Properties and the president of CSI. Other than the day-to-day property management business of CSI, the business affairs of both Gordon Properties and CSI are conducted by consensus of the four owners of Gordon Properties. Mr. Sells regularly consults with his sister and cousins before making decisions as manager of Gordon Properties or president of CSI.

The books and records of CSI and Gordon Properties are separate. They file separate tax returns. There is no indication of commingling of funds or joint bank accounts. After the association terminated CSI as managing agent, CSI was unable to meet its obligations. Gordon Properties initially loaned money to CSI to meet its obligations, but later, on advice of its accountant, converted the loans to capital contributions and has further funded CSI through capital contributions since then. The accountant was of the opinion that the Internal Revenue Service would treat the loans as capital contributions. The revised treatment was in accord with IRS regulations and avoided potential tax issues. There is no intercompany debt. The capital contributions are significant. Most were made to fund the litigation between the association and CSI.

The genesis of the association's claim is in its termination of CSI as its managing agent. The termination was not handled well. CSI asserted that its management contract could only be

3

terminated by the condominium association's membership and not simply by the board of directors. CSI did not recognize the validity of the termination and continued to collect condominium fees, principally from Gordon Properties. In addition, the association claimed that CSI had failed to properly file a tax return resulting in a loss to it. Litigation ensued. Ultimately, in a suit in which the condominium association sought relief against both CSI and Gordon Properties, the state court found in favor of the condominium association against CSI, but against the condominium association and in favor of Gordon Properties which was dismissed from the case. The association's proof of claim in CSI's case is for the judgment it recovered against CSI in state court.

The genesis of the association's claim against Gordon Properties is different. It arises from the manner in which the board of directors assessed condominium fees against the restaurant unit. After the board of directors terminated CSI as its managing agent, it determined that the manner in which the common expenses had been assessed against the restaurant unit for at least 20 years was incorrect. It sought to change the assessment formula, recalculate the prior assessments not barred by the statute of limitations, and collect them from Gordon Properties. The additional amount due was significant and litigation ensued. That matter was partially resolved by a judgment obtained by the association in the state court. The association's proof of claim in Gordon Properties' case is for the condominium fees claimed due. An objection to the association's proof of claim is set for trial later this month to resolve the remaining issues of the assessment.

### **Substantive Consolidation**

The manner in which the two cases are administered – that is, whether they are administratively consolidated or substantively consolidated – is important to both the debtors and to the creditors. There is a difference between administrative consolidation and substantive consolidation. Administrative consolidation, or joint administration, is justified on the grounds of convenience and efficiency. 2 Collier on Bankruptcy ¶ 302.06, at 302–19 (16th ed. rev., 2011). Joint administration permits a trustee to administer two cases together, however, the individual estates remain legally distinct entities. The rights of the debtors, the creditors and the trustee are not altered. *In re Blair*, 226 B.R. 502, 505 (Bankr.D.Me. 1998); *In re McCulley*, 150 B.R. 358, 360 (Bankr.M.D.Pa. 1993). Substantive consolidation is different. When two or more estates are substantively consolidated, they become one estate. Creditors' rights, especially with respect to distributions, may be altered.

Factors taken into account in deciding whether to substantively consolidate two estates are more than mere convenience and efficiency of administration. The criteria for substantive consolidation with corporate debtors is well developed. *In re Peramco Int'l, Inc.,* 242 B.R. 313, 317 n. 5 (E.D.Va. 2000), *rev'd on other grounds,* 2001 WL 101463 (4th Cir., Feb. 7, 2001)(unpublished opinion); *In re Bonham,* 229 F.3d 750, 765–66 (9th Cir. 2000); *Union Savings Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co., Ltd.),* 860 F.2d 515, 518 (2nd Cir. 1988); *Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp., Inc.),* 810 F.2d 270, 276 - 77 (D.C.Cir. 1987); *Stone v. Eacho (In re Tip Top Tailors, Inc.),* 127 F.2d 284, 289 - 90 (4th Cir. 1942), *reh'g denied,* 128 F.2d 16, *cert. denied,* 317 U.S. 635, 63 S.Ct. 54, 87 L.Ed. 512 (1942). There are two basic ideas. The first is whether the debtors so intermingled their financial affairs that it is difficult to unravel

them or is unfair to creditors to treat them as separate estates. The second is the prejudice to the creditors (and debtors) if the estates are consolidated. "[B]ecause every entity is likely to have a different debt-to-asset ratio, consolidation almost invariably redistributes wealth among the creditors of the various entities. This problem is compounded by the fact that liabilities of consolidated entities *inter se* are extinguished by the consolidation." *In re Auto-Train,* 810 F.2d at 276.

The Courts of Appeals have developed two similar, but not identical, formulations. *In re Auto-Train* stated:

> Before ordering consolidation, a court must conduct a searching inquiry to ensure that consolidation yields benefits offsetting the harm it inflicts on objecting parties. *See, e.g., In re Snider Bros., Inc.,* 18 B.R. 230, 237-38 (Bankr.D.Mass.1982). The proponent must show not only a substantial identity between the entities to be consolidated, but also that consolidation is necessary to avoid some harm or to realize some benefit. *Id.; see also Flora Mir Candy Corp. v. R.S. Dickson & Co.,* 432 F.2d at 1063; *Chemical Bank New York Trust Co. v. Kheel,* 369 F.2d at 847. At this point, a creditor may object on the grounds that it relied on the separate credit of one of the entities and that it will be prejudiced by the consolidation. *See Chemical Bank New York Trust Co. v. Kheel,* 369 F.2d at 848 (Friendly, J., concurring). If a creditor makes such a showing, the court may order consolidation only if it determines that the demonstrated benefits of consolidation "heavily" outweigh the harm. *In re Continental Vending Machines Corp.,* 517 F.2d at 1001.

*Id.* at 276.

*Union Savings Bank v. Augie/Restivo Baking Company, Ltd. (In re Augie/Restivo Baking Company, Ltd.),* 860 F.2d 515 (2nd Cir. 1988), states the test differently. It states:

> The sole purpose of substantive consolidation is to ensure the equitable treatment of all creditors. Numerous considerations have been mentioned as relevant to determining whether equitable treatment will result from substantive consolidation. *See, e.g., In re Continental Vending Machine Corp.,* 517 F.2d 997, 1001 (2d Cir.1975) (whether creditors knowingly deal with corporations as unit), *cert. denied sub nom. James Talcott, Inc. v. Wharton, Trustee,* 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976); *Flora Mir,* 432 F.2d 1060 (whether one debtor was independent of other debtor when certain securities issued; whether creditor dealt only with one debtor and lacked knowledge of its relationships with others; whether interrelationships of group were closely entangled); *Kheel,* 369 F.2d 845 (whether

entanglement of business affairs of related corporations was so extensive that the cost of untangling would outweigh any benefit to creditors); *In re Donut Queen, Ltd.,* 41 B.R. 706 (Bankr.E.D.N.Y.1984) (presence or absence of consolidated financial statements; difficulty in segregating individual debtors' assets and liabilities; existence of parent and inter-corporate guarantees on loans; unity of interests and ownership; existence of transfers of assets without observance of corporate formalities; profitability of consolidation at single physical location); *In re Richton Int'l Corp.,* 12 B.R. 555 (Bankr.S.D.N.Y.1981) (same); *In re Food Fair,* 10 B.R. 123 (Bankr.S.D.N.Y.1981) (same). An examination of those cases, however, reveals that these considerations are merely variants on two critical factors: (i) whether creditors dealt with the entities as a single economic unit and "did not rely on their separate identity in extending credit," 5 Collier on Bankruptcy § 1100.06, at 1100-33; see also *Flora Mir,* 432 F.2d at 1062-63; *Kheel,* 369 F.2d at 847; *Soviero v. Franklin Nat. Bank,* 328 F.2d 446 (2d Cir.1964) (consolidation proper where creditors dealt with debtor and its affiliates as if they were one corporation and failed to demonstrate reliance on credit of any separate judicial entity); *In re D.H. Overmyer,* 2 B.C.D. 412 (Bankr.S.D.N.Y.1976); or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors, *Kheel,* 369 F.2d at 847; *Commercial Envelope,* 3 B.C.D. at 649-52.

With regard to the first factor, creditors who make loans on the basis of the financial status of a separate entity expect to be able to look to the assets of their particular borrower for satisfaction of that loan. Such lenders structure their loans according to their expectations regarding that borrower and do not anticipate either having the assets of a more sound company available in the case of insolvency or having the creditors of a less sound debtor compete for the borrower's assets. Such expectations create significant equities. Moreover, lenders' expectations are central to the calculation of interest rates and other terms of loans, and fulfilling those expectations is therefore important to the efficiency of credit markets. Such efficiency will be undermined by imposing substantive consolidation in circumstances in which creditors believed they were dealing with separate entities.

*Id.* at 517- 518. While similar, the *Augie/Restive* test is generally preferred over the *Auto-Train* test.

### **Discussion**

The elements supporting substantive consolidation are not sufficiently present in this case. Prepetition, CSI and Gordon Properties properly and clearly maintained their separate identities. There was no evidence of commingling of bank accounts, inventory or other assets. Nor is there

7

evidence of the failure by the two debtors to maintain proper books and records. The debtors were engaged in different businesses. CSI was a property management company and Gordon Properties was a landlord. The businesses did not confuse people who dealt with them. This is especially true of the condominium association which had a different relationship with each one. CSI was its management company for more than 27 years. Gordon Properties was a unit owner. CSI's business extended beyond the condominium association and Gordon Properties. It also managed at least 18 other condominium associations. The distinction between the two debtors and their respective businesses was clear. Those dealing with them would not likely confuse the two entities and there is no evidence that any creditor thought that it was dealing with one when it was dealing with the other or that it was confused about the identity of the company with which it was dealing.

Postpetition, there are no accounts to unravel. There was no commingling of assets that must be sorted out or transactions to be avoided or reversed. There are no intercompany debts. Gordon Properties is funding the postpetition deficiencies of CSI, but not as loans. They are all capital contributions. No creditor is injured by this arrangement. The assets of CSI are not diminished by the reorganization effort or the litigation with the association.

The condominium association points to the parent-subsidiary relationship between the two debtors and the effective control of both by the four members of Gordon Properties. It points to the judgment it obtained against CSI and the manner in which members of Gordon Properties individually participated in the events that gave rise to CSI's obligation to the association. The difficulty of the association's argument is that it favors factors more appropriately considered in an action to pierce the corporate veil rather than a motion for substantive consolidation. The tests are different.

Substantive consolidation would ensure that the association would be paid its judgment against CSI in full. There are substantial assets of Gordon Properties that would be available to achieve this. Without substantive consolidation, the association will only be paid to the extent that CSI remains in business and generates a profit. When asked why CSI was trying so hard to reorganize rather than simply close and liquidate, Mr. Sells, its CEO and a manager of Gordon Properties, stated that he thought that it was a viable entity that would ultimately make money. He noted that the large expenses that were being paid by capital contributions from Gordon Properties were primarily legal fees relating to the litigation with the association. When that is over, those expenses will end. However, the benefit to the association of being able to reach Gordon Properties' assets to satisfy its judgment against CSI is not itself sufficient to justify substantive consolidation.

There is a final, relatively unique consideration. Substantive consolidation would provide the condominium with a remedy it was denied in state court. The association sued both CSI and Gordon Properties. The court found in favor of Gordon Properties. The efforts of the association to reach the assets of Gordon Properties under state law were unsuccessful. But that is exactly what it seeks to do here. In this case, it would be inappropriate to allow the association to conduct an end run around the prior adverse state court determination. Substantive consolidation is an equitable remedy. The factors supporting it are not sufficiently present in this case to support the remedy.

## Conclusion

The association's motion for substantive consolidation will be denied.

Alexandria, Virginia
February 8, 2012

/s/ Robert G. Mayer
Robert G. Mayer

                                        United States Bankruptcy Judge

copies to:
Donald F. King
Madeline A. Trainor
Michael S. Dingman
Robert M. Marino

17503