# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| In re:<br><br>GORDON PROPERTIES, LLC, and<br>CONDOMINIUM SERVICES, INC.,<br><br>    Debtors. | Case No.  09-18086-RGM<br>(Jointly Administered)<br>(Chapter 11) |
| GORDON PROPERTIES, LLC, and<br>CONDOMINIUM SERVICES, INC.,<br><br>    Debtors,<br><br>vs.<br><br>FIRST OWNERS' ASSOCIATION OF<br>FORTY SIX HUNDRED CONDOMINIUM, INC.,<br><br>    Creditor. | Contested Matter<br>(Motion to Approve Settlement,<br>Docket Entry 498) |

## MEMORANDUM OPINION

This case is before the court on preliminary matters related to the Joint Motion and Memorandum for Order Approving Settlement Agreement Between Debtors and First Owners' Association of Forty Six Hundred Condominium, Inc., and for Related Relief (Docket Entry 498). The Rule 9019 settlement motion seeks court approval of a settlement agreement intended to end more than six years of litigation. This is an important motion and will, whether approved or disapproved, determine the trajectory of the balance of Gordon Properties' and Condominium Services, Inc.'s ("CSI")[1] bankruptcy cases and have an impact on the almost 400 members of First Owners' Association ("FOA").

---

[1] CSI is wholly owned by Gordon Properties.

### I.  The Court's Role in Approving Settlements under Fed.R.Bankr. P. 9019

Approving settlements under Fed.R.Bankr.P. 9019 is an important part of a chapter 11 debtor's reorganization effort.  A court's involvement in a settlement in a bankruptcy case is different from its involvement in most non-bankruptcy cases.  "The nature of a bankruptcy case imparts upon the bankruptcy court a duty to scrutinize settlements in a more exacting manner than would be warranted in a two party context." *In re Merry-Go-Round Enterprises, Inc.,* 229 B.R. 337, 347 (Bankr.D.Md. 1999).  In most non-bankruptcy cases, the litigants are the only ones involved in the settlement and the only ones affected by it.  They act in their own best interests as they see them and have had the opportunity to obtain representation and advice.  Bankruptcy cases are different.  They are community affairs with different constituencies having different interests in the reorganization of the debtor.  Many creditor claims are too small and the likelihood of recovery too problematic to make representation economically feasible.[2]  A compromise between a chapter 11 debtor in possession and a creditor affects all other creditors in the case and the debtor's reorganization efforts.  The Supreme Court recognized this aspect of bankruptcy cases and set out the bankruptcy court's role in approving a settlement in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157 (1968).  It stated:

> Compromises are 'a normal part of the process of reorganization.'  In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.  At the same time, however, it is essential that every important determination in reorganization proceedings receive the 'informed, independent judgment' of the bankruptcy court. . . . The fact that courts do not ordinarily

---

[2]The Bankruptcy Code recognizes the difficulty of individual creditors and investors. It contains several means to address the imbalance.  The United States Trustee exercises some supervision over chapter 11 cases. He may appoint various committees, the most common being an unsecured creditors' committee. The committees are funded by the debtor in possession.  In addition, information is required to be made available or disseminated, most notably monthly financial reports and the disclosure statement.

>scrutinize the merits of compromises involved in suits between individual litigants cannot affect the duty of a bankruptcy court to determine that a proposed compromise forming part of a reorganization plan is fair and equitable. There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Id.* 390 U.S. at 424-425; 88 S.Ct. at 1163 (citations omitted). While *TMT Trailer Ferry* was decided under the Bankruptcy Act of 1898, the principles continue to apply under the Bankruptcy Code of 1978. For example, the Court of Appeals for the Sixth Circuit stated in *Reynolds v. Commissioner of Internal Revenue*:

>In considering a proposed compromise, the bankruptcy court is charged with an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable. . . . The court is not permitted to act as a mere rubber stamp or to rely on the trustee's word that the compromise is "reasonable." . . .
>
>The need for this safeguard is obvious. Any settlement between the debtor and one of his individual creditors necessarily affects the rights of other creditors by reducing the assets of the estate available to satisfy other creditors' claims.

*Reynolds v. Commissioner of Internal Revenue,* 861 F.2d 469, 473 (6th Cir. 1988) (citation omitted).

## II. Conflicts of Interest Arising from Overlapping Directorships

The court's review of the proposed settlement agreement in this case is complicated by the overlapping directorships between the parties to the settlement – the debtor[3] and the debtors' principal creditor, FOA.[4] Four of the seven directors of FOA are owners of Gordon Properties. This complexity developed two years after the case was filed. Before Gordon Properties filed its petition in bankruptcy on October 2, 2009, none of FOA's directors were affiliated with the debtor. The 2011 election for FOA's Board of Directors was held on October 5, 2011 under the supervision of this court. *See Gordon Properties, LLC v. First Owners' Association (In re Gordon Properties, LLC),* 460 B.R. 681 (Bankr.E.D.Va. 2011) (history of election controversy). The result was contested. On June 15, 2012, this court determined that four individuals affiliated with the debtor were elected to the FOA Board of Directors, however, on July 23, 2012, after further consideration, this court held that an entity could have only one representative of the entity on the Board at one time, thus disqualifying the debtor's second designee.[5] The final result was that three debtor-

---

[3] Both Gordon Properties and CSI filed voluntary petitions in bankruptcy pursuant to chapter 11 of the Bankruptcy Code. The cases are being jointly administered. Gordon Properties is the debtor principally involved in the matters addressed in this Memorandum Opinion. Unless the context otherwise makes plain, references to the "debtor" (in the singular) refer only to Gordon Properties while references to the "debtors" (in the plural) refer to both Gordon Properties and CSI.

[4] FOA has an allowed claim against CSI. It holds a final judgment against CSI in the amount of $453,533.12. *Condominium Services, Inc. v. First Owners' Association,* 281 Va. 561, 709 S.E.2d 163 (2011). FOA filed a proof of claim in Gordon Properties' case in the amount of $315,673.36. This court disallowed the claim. *Gordon Properties, LLC v. First Owners' Association of Forty Six Hundred Condominium, Inc.,* 2012 WL 3644788 (Bankr.E.D.Va. Aug. 23, 2012). The matter is on appeal to the District Court.

[5] The three directorships held by the three Gordon Properties' affiliated directors arise from the manner in which Gordon Properties and its owners hold title to 42 condominium units. Bryan Sells, one of four owners of Gordon Properties, owns a condominium unit in his own name. Residential Holdings, Inc., which is affiliated with Gordon Properties and controlled by the owners of Gordon Properties, owns one condominium unit. Gordon Properties owned 41 condominium units when the case was filed, including the street-front restaurant unit which is the focal point of the dispute between the parties. It entered into a contract to sell one unit about five weeks before it filed this case. The court approved the sale and the contract closed.

affiliated directors were elected to the Board. The three debtor-affiliated directors were on FOA's Board while the settlement agreement was negotiated and are serving on the Board today while the parties seek court approval of the settlement agreement.

Two actions of the Board since the debtor-affiliated directors were seated raise red flags. The first action was taken immediately after this court entered its order on June 15, 2012 resolving the contested 2011 election and the four debtor-affiliated directors were seated. On June 20, 2012, the Board dismissed FOA's counsel. *See First Owners' Association of Forty Six Hundred Condominium, Inc. v. Gordon Properties, LLC (In re Gordon Properties, LLC),* Case No. 1:12cv394-LMB (E.D.Va. June 20, 2012) (Docket Entries 14-2 and 15-2).[6] An appeal was pending in the District Court from a decision of this court favorable to the debtor.[7] Counsel had fully briefed the matter and the District Court had set the appeal for argument on its June 29, 2012 calendar. *Id.* Notice of Hearing. (Docket Entry 13). Both counsel properly sought to withdraw. *Id.* Motions to Withdraw. (Docket Entries 14 and 15). The motions were granted. Jennifer L. Sarvadi who represented FOA in a different matter against the debtor made a special appearance and asked for a continuance so that FOA could retain new counsel. The District Court noted that, "After appellant's well-established and competent counsel had fully briefed the issues and just one week before oral argument, appellant fired counsel." *Id.* Order at 1 (Docket Entry 21). It denied the motion for a continuance, finding that:

---

[6] FOA was represented by Michael S. Dingman of Reed Smith and Robert M. Marino of Redmon Peyton & Braswell, LLP. Mr. Dingman had represented FOA for at least six years in its litigation with the debtors. Mr. Marino, a well-experienced bankruptcy attorney, was retained when the bankruptcy case was filed to assist in bankruptcy matters. Both firms were dismissed. FOA appealed this court's order denying substantive consolidation, a bankruptcy issue.

[7] FOA had asked that the Gordon Properties and CSI cases be substantively consolidated. This court denied the motion.

> With no good cause having been given for the termination of original counsel so close to oral argument and after the matter had long since been fully briefed by the parties, the Court finds that good cause for this late-requested continuance is not shown

*Id.* at 2.[8]  This court notes that its June 15, 2012 order resolving the election contest provided that:

> Without approval of this court on such notice as this court may require at that time, the Board of Directors may not discontinue, dismiss, fail to defend, fail to prosecute, or fail to commence any appeal or action and may not settle any action or claim involving Gordon Properties or CSI or any member or owner thereof.

*Gordon Properties, LLC v. First Owners' Association of Forty Six Hundred Condominium Association, Inc. (In re Gordon Properties, LLC)*, Adv.Proc. 11-1020-RGM, Order at ¶7 (Bankr.E.D.Va. June 15, 2012).  This court has not been called on to determine whether dismissal of counsel without substitute counsel immediately available violated this provision of its order.

On March 12, 2013, the Board filed a motion, First Owners' Association's Motion to Approve the Service Agreement with Condominium Services, Inc., seeking approval of a Service Agreement "dated and made effective as of January 23, 2013." *Id.* at 1. (Docket Entry 326-1).[9]  In resolving the contested Board election, this court prohibited a contract between CSI and FOA without this court's prior approval.[10]  The court declined to approve the Service Agreement at the

---

[8]The District Court held the hearing as scheduled and reversed this court in an opinion favorable to FOA.  The matter is presently pending in this court.

[9]CSI previously managed FOA, but was dismissed.  FOA later sued CSI for actions CSI took both before and after its dismissal and obtained a judgment against CSI for both compensatory and punitive damages. *Condominium Services, Inc. v. First Owners' Ass'n of Forty Six Hundred Condominium, Inc.*, 281 Va. 561, 709 S.E.2d 163 (2011). That judgment will be compromised by the proposed settlement, if approved.

[10]The June 15, 2012, order provided:

> CSI may not accept employment from the Association during the pendency of its bankruptcy case without the prior approval of this court with such notice as may be required by this court at that time.

*Gordon Properties, LLC v. First Owners' Association of Forty Six Hundred Condominium Association, Inc. (In re*
(continued...)

hearing and continued the matter so that the parties could present further evidence concerning the propriety of the contract. *In re Gordon Properties, LLC,* 2013 WL 1619941 (Bankr.E.D.Va. April 15, 2013).

The overlapping directorships, the dismissal of knowledgeable and experienced counsel days before argument of an important appeal and the decision to hire CSI are red flags. They raise questions about the process by which the settlement agreement was reached, the debtor's involvement in the process and the manner in which the conflicts of interests of the debtor-affiliated directors were identified and addressed. They also raise another question whether FOA and the debtors are adversarial.

The American judicial system is an adversarial system. It is premised on the principal that the parties represent their own interests (which are adverse to the opposing party) and that each will present the facts and arguments most favorable to itself and most unfavorable to the other. A court is thus reasonably assured that the case is fully developed and that all relevant facts and arguments are presented. The debtor and FOA were quite adversarial for years. But are they still sufficiently adverse to each other to assure that this court can fulfill its responsibility to reach an "informed and independent judgment as to whether a proposed compromise is fair and equitable" and can be apprised "of all facts necessary for an intelligent and objective opinion"? *TMT Trailer Ferry,* 390 U.S. at 424; 88 S.Ct. at 1163. The court's solution, *sua sponte*, was to appoint a disinterested *amicus curia* to assure a full, fair and transparent review of the proposed settlement.

---

[10](...continued)
*Gordon Properties, LLC),* Adv.Proc. 11-1020-RGM, Order at ¶7 (Bankr.E.D.Va. June 15, 2012).

Rather than embracing a process that could alleviate any cause for suspicion, the debtors sought reconsideration of the appointment of the *amicus curia*.[11] Stephen E. Leach, the court appointed *amicus,* suggested a simple and elegant solution – appoint an examiner under 11 U.S.C. §1104 instead of an *amicus curia.*[12] The United States Trustee filed such a motion. The debtors objected to it, too.[13] FOA did not join in the debtors' motion for reconsideration or their objection to the United States Trustee's motion to appoint an examiner.

---

[11]The debtors raised three objections:

1) the Court does not have the power to appoint an *amicus* to act as fact finder or de facto special master;
2) that even if the Court has such power, the broad unlimited direction is unwarranted; and
3) that there is no authority to require the Debtors to bear the costs of such an extraordinary measure.

Motion to Reconsider Order Appointing *Amicus Curiae* at 1.

[12]Mr. Leach noted that the debtors sought to resolve their objections. He stated:

*Amicus* was presented with a proposal for resolving the issued raised in the Motion [for Reconsideration]. Notwithstanding that the proposal had the indicia of good faith, it included limitations on *Amicus* that were unacceptable.

Response of *Amicus Curiae* to Debtors' Motion to Reconsider Order Appointing *Amicus Curiae* at 5 n.1. The court has no knowledge of what those proposed limitations were but would be concerned that any limitation would create new suspicions and undermine the very purpose of the appointment.

[13]The debtors' objections to the appointment of an examiner were:

A. It is premature to appoint an examiner, and the Court should first conduct the hearing on approval of the Settlement Agreement.
B. The UST has not alleged, and it cannot establish, facts necessary to support appointment of an examiner.
C. If the Court decides to appoint an examiner, the scope of the examiner's inquiry should be limited to the issues related to the Settlement Agreement, and the proposed examiner should be required to submit a budget that is subject to notice an opportunity to object.

Objection of Debtors to Motion of United States Trustee to Appoint Examiner at 2, 3 and 7.

### III. Debtors' Objections to Appointment of Amicus Curia and Examiner[14]

### 1. Delay in Appointment

The debtors' first argument sought to delay the appointment of an *amicus curia* or an examiner. The gist of their argument is set out in their Preliminary Statement in their objection to the United States Trustee's motion to appoint an examiner. The debtors stated:

> The issues that appear to concern both the Court and the UST are issues that the Debtors are confident can be answered and resolved at the evidentiary hearing to approve the Settlement Agreement. Only after that hearing has been conducted and the Court has heard the evidence will the Court know whether there is a need or basis for appointment of an examiner. At this time, however, there simply is no demonstrable evidence to support appointment of an examiner.

Objection of Debtors to Motion of United States Trustee to Appoint Examiner at 1. They amplified this argument, stating:

> The questions raised all go to facts about which the Court should be informed in order to make its decision on whether to approve the Settlement Agreement. In short, all of those facts come down to a single question, that is, whether the Settlement Agreement is the proper corporate act of and creates a binding contractual commitment by First Owners' Association of Forty Six Hundred Condominium, Inc. ("FOA"). These are facts that are part of the evidentiary burden of the parties in order to obtain approval of the Settlement Agreement. The parties are prepared to present that evidence.

*Id.* at 2 (footnote omitted).

The *amicus*' response to the debtors' Motion to Reconsider points out the fallacy of the debtors' argument. Mr. Leach stated:

> The self-evident purpose of the Court's order appointing an *amicus* was to provide the Court with an additional, indisputably disinterested lens, on the question of whether the settlement agreement represents a genuine arm's length deal between

---

[14]Many of the arguments in opposition to the appointment of either an *amicus curiae* or an examiner overlap. To the extent that they are similar, they are addressed together.

> genuinely independent parties, or is to some improper degree a simulacrum controlled behind the scenes by Debtors.
>
> The potential problem with Debtors' assertion that FOA can independently establish that its decision to enter into the settlement agreement was free of inappropriate pressure or influence is that, were such inappropriate pressure or influence to have existed (and *Amicus* has no opinion on that question), that very same pressure or influence might be brought to bear to create a distorted evidentiary record. The integrity of the bankruptcy court system requires that a bankruptcy court be satisfied that any deal between a debtor and a third-party represents a genuine agreement and not a manipulated Potemkin village version of a deal.

Response of *Amicus Curiae* to Debtors' Motion to Reconsider at 2. The amicus' response is absolutely on target. Nothing more need be said. The debtors' argument is not well taken.

### 2. Subject Matter of Investigation

The debtors argue that the type of investigation ordered in this case is outside the permissible scope of investigations that an examiner may make, relying on 11 U.S.C. §§1104(c) and 1106(b). They characterize the investigation as an investigation of the merits of the settlement agreement and the propriety of approving it. They correctly note that §1104(c) lists "investigation[s] of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor" as proper investigations. They argue that this is not a fraud investigation and that it is, therefore, outside the scope of permissible investigations. Similarly, they add, §1106(a)(3) mandates the investigations enumerated in it when an examiner is appointed. These investigations are inappropriate and unnecessary in this case, therefore, the proposed investigation must be outside the scope of permissible investigations because the examiner would be required to make the inappropriate and unnecessary investigations mandated by §1106(a)(3).

The types of investigations listed in §1104(c) are illustrative. They are preceded by the operative provision of the statute: "[O]n request . . . the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate" and then lists types of investigations that are included in §1104(c). The list is not an exclusive list of all investigations that an examiner may undertake. The statute uses the introductory word, "including" which is an inclusive, not exclusive word. 11 U.S.C. §102(3). The mandate of the section is to conduct appropriate investigations. The list merely illustrates some, but not all, that are appropriate.

The portions of §1106(a)(3) relevant to this case are the introductory clause ("except to the extent that the court orders otherwise") and the final clause ("and any other matter relevant to the case or to the formulation of a plan"). These portions of §1106(a)(3) give the court broad discretion in ordering an investigation and in setting the parameters of an examiner's investigation. Rather then limiting permissible investigations by examiners, §§1104(c) and 1106(b) give the court broad discretion to appoint an examiner.

The investigation ordered in this case is within the broad scope of investigations a court may order an examiner to make and is appropriate in this case. Approval of the settlement agreement is a material issue in this case and in the long controversy between the parties. It will have a significant impact on the formulation of the plan of reorganization, the approval of the plan and the remaining creditors.[15] It is critical that the settlement agreement be binding on FOA. This issue is not usually presented. Usually, the two parties to the settlement agreement are not entwined by anything except the dispute. Here, however, the overlapping directorships create a relationship that must be

---

[15]The effect of the settlement agreement on the reorganization effort is clear. Not only does it resolve a major claim, it requires FOA to support any plan of reorganization that the debtors may put forward. No plan of reorganization has yet been filed.

examined. Both the process by which the settlement agreement was negotiated and the fairness of the agreement are relevant – in fact, critical – issues. They directly address the conflict of issues. Va. Code (1950) §13.1-871.[16]

### 3. Restriction to Debtor's Acts

The debtors next argue that an investigation must be limited to the acts and conduct of the debtor. They argue that §1104(c) only permits the appointment of an examiner "to conduct such an investigation *of the debtor* as is appropriate." (emphasis added). This restriction to investigate the debtor, but not third parties, they continue, is reenforced by §1106(b) which mandates that an examiner perform the duties described in §1106(a)(3) and (4). These mandatory investigations are to "investigate the acts, conduct, assets, liabilities, and financial condition *of the debtor,* the operation *of the debtor's business."* 11 U.S.C. §1106(a)(3)(emphasis added). There are two answers to this concern. First, answer is simply that it is the debtor's conduct that is being investigated. The debtor created the conflict of interest by seeking and obtaining election to the FOA Board of Directors. Its designees exercised their powers or directors. Even if the court were to accept the debtors' narrow construction of 11 U.S.C. §§1104(c) and 1106(b), the examiner's investigation is "of the debtor." Second, §1106(a)(3) also lists "any other matter relevant to the case or to the formulation of a plan." Approval of the settlement agreement falls within both categories. The

---

[16]Bankruptcy Courts are courts of equity and debtors must act in good faith throughout the case. The question of the debtor's good faith arises from its own conduct in this case. It could be viewed as seeking control of its adversary's Board of Directors and exercising its powers as directors of FOA for what may be the debtors' – but not FOA's – best interest. FOA's motion to dismiss this case for lack of good faith was denied. The District Court dismissed FOA's appeal because the order was interlocutory. On a later appear, the District Court, sua sponte, required the parties to brief the issue of whether the case should be dismissed for lack of good faith. That appeal and the sua sponte order are stayed pending resolution of the settlement motion.

settlement agreement requires FOA to support any plan either debtor may propose and not oppose dismissal of the case, if requested by either debtor. Settlement Agreement at ¶13. In addition to the many other ways in which the settlement agreement affects the case and the formulation of chapter 11 plans, this provision inextricably ties the settlement agreement to the case and prospective chapter 11 plans.

### 4. Limiting Investigation to Specific Questions

The debtors seek to limit the examiner's investigation by limiting the scope of the investigation. In their Memorandum in Support of Motion to Reconsider, they state:

> If the issue is strictly the issue of corporate governance, as suggested in the Order, then the Court should articulate the facts and law that it needs to resolve that issue. Notwithstanding that the parties believe the Court would conclude that the original appointment of the [Special Litigation Committee] following the 2012 election satisfied all applicable legal requirements, in light of the allegations contained in the Sobol complaint, FOA's board acted prophylactically to ratify the appointment and the actions of the [Special Litigation Committee] with respect to the settlement agreement in order to remove any doubt. On the other hand, if the issue is broader, for example, the fairness of the settlement, then the Debtors submit there is simply no authority to delegate the Court's role in approving a settlement. More importantly, for the same reasons that the Court is required by applicable case law to defer to the business judgment of the Debtors in entering into the settlement, the Court also should defer to the business judgment of FOA.

Memorandum in Support of Motion to Reconsider Order Appointing *Amicus Curiae* at 5-6 (footnote omitted). *See also* Objection of Debtors to Motion of United States Trustee to Appoint Examiner at 7.[17]

---

[17]The debtors state:

> [T]he scope of the examiner's inquiry should be limited to the issues directly relevant to approval of the Settlement Agreement. Specifically, the scope of inquiry should be:
>
> (i) Was appointment of the [Special Litigation Committee] by FOA's Board a proper act of FOA?

(continued...)

This argument is a transparent effort to limit the utility of the examiner's report. The scope of the examiner's investigation is clear. No additional clarification or limitation is necessary. The subject matter of the investigation is the motion before the court for approval of the settlement agreement. The issues are the overlapping directorships between the parties to the settlement agreement, the conflicts of interest matters, the binding nature of the settlement agreement on FOA and the fairness of the agreement itself. In this case with all of its complexities, it is not possible to know in advance where the examiner's investigation will take him and it is unwise to limit his investigation to precise questions or the presently known issues.

### 5. Limiting Investigation by Limiting Resources

The debtors also seek to limit the investigation by limiting the examiner's resources. An investigation must necessarily increase the expense of the administration of the case and delay the final hearing on the approval of the settlement motion. These are legitimate concerns for a debtor in possession. However, the hallmark of every bankruptcy case is transparency – the full, fair and timely disclosure of information that affects the administration of the estate. A debtor in possession

---

[17](...continued)
    (ii)    Did the [Special Litigation Committee] have the authority to enter into the Settlement Agreement?
    (iii)    Was the Settlement Agreement approved by the [Special Litigation Committee]?
    (iv)    Was the Settlement Agreement approved by FOA's Board?
    (v)    Was the Settlement Agreement approved by the Debtors?
    (vi)    Is the Settlement Agreement the valid and binding act of FOA and the Debtors?

In addition, the Court should require the examiner . . . submit, in advance, a budget to render the defined services, with notice and opportunity to object.

Objection to the United States Trustee's Motion to Appoint an Examiner at 7 (footnote omitted).

is not fulfilling his obligations if he inhibits or delays the flow of information that should be available to the creditors, the United States Trustee or the court. The concern that an examiner may become overly enthusiastic, be inefficient or otherwise cost too much is best dealt with differently. The court can always reign in an examiner's who becomes overenthusiastic and the debtors have the right to request that the court do so. Trying to constrain an examiner before there is any indication that he is exceeding or likely to exceed his mandate is unnecessary. Moreover, no fee will be paid to the examiner except upon an application for compensation at which time the debtors may be heard.[18]

### IV. The Debtors' Right to Attend the Examiner's Interviews and Cross-examine Interviewees

The court granted the United States Trustee's motion to appoint an examiner by orders entered on June 2, 2013 and June 3, 2013 and approved the United States Trustee's appointment of Mr. Leach as the examiner by an order entered on June 12, 2013. On June 26, 2013, the examiner filed a Motion for Clarification of the Rights of Gordon Properties, LLC in Connection with the Conduct of the Examiner's Investigation. The examiner commenced his investigation by scheduling interviews with various individuals. If the individual was represented by counsel, his or her counsel was invited to attend the interview. In the case of members of the Special Litigation Committee ("SLC"), counsel for the SLC was invited to attend. The examiner explained:

---

[18]It is helpful if periodic informational statements of fees incurred are provided to the debtors and the United States Trustee. Informational statements enable the parties to take earlier action if the fees appear to be excessive rather than wait for a fee application after all the work is completed. In this case, the examiner's report will be due within six weeks and only one informational fee statement will be necessary.

> But because the interviews are just that – interviews, not depositions or examinations conducted under Bankruptcy Rule 2004 – the Examiner has not invited counsel for the Debtor (or anyone else) to attend. . . . The Debtors have told the Examiner that the latter's failure to have Debtor's counsel present during the Examiner's interview of members of the SLCs violates the Debtor's due process rights and turns the interviews into wrongful *ex parte* communications between the Examiner and another party.

Examiner's Motion for Clarification of the Rights of Gordon Properties, LLC in Connection with the Conduct of the Examiner's Investigation at 2. Notwithstanding the alleged violation of the debtor's constitutional rights, the debtor decided not to seek court assistance in protecting those important rights. The examiner continued:

> Instead, the Debtor has told the Examiner that it reserves its right to object to the Examiner's report (and the Examiner's compensation) based on the violation of the Debtor's due process rights. In effect, the Debtor has decided to put its due process complaints in its pocket, to be pulled out if it does not like what the Examiner says in his report and to form the basis for a challenge to the Examiner's compensation. The Debtor's wish to suspend the Sword of Damocles over the Examiner threatens to chill the Examiner's investigation with the spectre of future litigation and is wholly unnecessary because the Court can make a determination on this point now – either the Examiner's investigation will violate the Debtor's due process rights by engaging in wrongful *ex parte* communications or it will not.

*Id.* at 3.

The debtors replied that they had been and would be denied their constitutional rights of due process to "confront and cross examine those whose testimony might be used as evidence" by the examiner's failure to give them notice of his intended interviews and the right to be present and cross-examine the interviewees. Debtors' Response to Motion of Examiner for Clarification Regarding Due Process at 1. In support of their contentions, they reprised the special master argument they made at the hearings on the appointment of the *amicus curia* and the examiner and which the court rejected. Memorandum in Support of Motion to Reconsider Order Appointing

*Amicus Curiae* at 4; Debtors' Response to Motion of Examiner for Clarification Regarding Due Process at 4. FOA filed a response that was carefully tailored. It had "no objection" to the examiner interviewing members of the Special Litigation Committee, other FOA "witnesses," the debtors or the debtors' principals, specifically, Mr. Sells, without FOA's counsel's attendance and right to cross examine them. Otherwise, it took no position on the debtors' motion. Response to Motion for Clarification Regarding Due Process at 1.

At the hearings on the appointment of the *amicus curia* and the examiner, the debtors argued that the appointment of an *amicus curia* or an examiner was a disguised appointment of a special master which is not authorized. Fed.R.Bankr.P. 9031. They argued that the examiner would be a de facto special master, would determine the facts of the case and would "usurp" the court's "independent judicial role as the fact finder." Objection of Debtors to Motion of United States Trustee to Appoint Examiner at 4. After acknowledging that the debtors disagreed with the court's prior ruling "over whether §1104 contemplates appointment of an examiner to engage in fact finding in pending litigation," they argued that:

> The reality is that assisting the Court in a fact finding role in pending litigation is the role of a special master. In that regard, FRCP 53, which authorizes appointment of a special master in litigation, and the case law interpreting that rule, make clear that *ex parte* communications by the master are impermissible (except in very unusual circumstances approved by the court in advance). The Debtors have been unable to locate a single case in which an examiner was appointed to conduct fact finding in litigation. While the Debtors acknowledge that lack of reported authority does not mean that §1104 does not contemplate such a role, it certainly should mean that the role should be similar to that of a special master when appointment is related to ongoing litigation. Similar to a special master engaged in fact-finding to assist the Court, the Examiner in this case should be prohibited from *ex parte* communications, and all parties should be afforded due process by notice and opportunity to participate.

Debtors' Response to Motion of Examiner for Clarification Regarding Due Process at 4.

The debtors' argument that this examiner is functionally equivalent to a special master and, therefore, should be subject to the same restrictions as a special master is not well taken. The sources of the authority to appoint a special master and an examiner are different. A special master is appointed by the District Court under Fed.R.Civ.P. 53 which is not applicable in bankruptcy. Fed.R.Bankr.P. 9031. An examiner is appointed by the United States Trustee on order of the Bankruptcy Court under 11 U.S.C. §1104(c) and Fed.R.Bankr.P. 2007.1(a). The functions of a special master and an examiner are different. A special master can have different roles, but Fed.R.Civ.P. 53 is predominately directed to a special master's adjudicatory role. He may, with the consent of the parties, hold trial proceedings and recommend findings of fact on issues to be decided without a jury. He regulates all proceedings before him. The prohibition on *ex parte* communications is directly related to a special master's adjudicatory role. It is the rule, but the District Court may provide otherwise as circumstances require. Fed.R.Civ.P. 53(b)(2)(A).

On the other hand, an examiner has no adjudicatory role, only an investigatory role. The examiner's report has no binding effect on the court. *In re Ionosphere Cubs, Inc.,* 156 B.R. 414, 433 (S.D.NY. 1993) ("The Examiner's findings are no more binding on the court than those of any other attorney's"); *Rickel & Assoc., Inc. v. Smith (In re Rickel & Assoc., Inc.),* 272 B.R. 74, 87-88 (Bankr.S.D.N.Y. 2002) ("[T]he evidence and findings in the Report are not binding. The Examiner conducted an investigation, but he was not charged – nor could he be – with the duty to 'hear and determine' any claims in this case."). An examiner's report is not admissible into evidence simply because it is an examiner's report. *United States v. Moore,* 27 F.3d 969, 975 (4th Cir. 1994) ("statement to the examiner, which was contained in that report, is hearsay and inadmissible unless some exception to the hearsay rule applies"); *In re Fibermark, Inc.,* 339 B.R. 321, 326-327

(Bankr.D.Vt. 2006) (examiner's report not admissible, but examiner's conclusions admissible as expert opinion); *Rickel & Assoc.,* 272 B.R. at 87 ("The Report is hearsay."). There is no request that it be accepted or approved by the court and no procedure to do so. It is publicly filed. It is available to all parties. It may suggest areas to them that they should consider or investigate further. *In re Fibermark,* 339 B.R. at 325. They may uses it or decline to use it as they see fit. Neither 11 U.S.C. §1104(c) nor Fed.R.Bankr.P. 2007.1 impose an ex parte communication restriction on an examiner although the court undoubtedly can impose appropriate restrictions and procedures on an examiner's investigation.

The debtors' argument goes beyond Fed.R.Civ.P. 53(b)(2)(A) and endeavor to make their asserted right to be present at the examiner's interviews and to cross-examine the interviewees a constitutional right. Under Fed.R.Civ.P. 53(b)(2)(A) the appointing court may permit *ex parte* communications. Under a constitutional argument, the appointing court could not abridge the constitutional right and permit *ex parte* communications.

The debtors do not have a constitutional right to be given notice of an impending interview or other investigatory action of the examiner. An examiner, like an attorney, has the right – subject to the Rules of Professional Conduct – to interview anyone he wishes without notice to the parties or an opportunity for them to be present or to cross-examine the interviewee. In this case, private interviews are important. There have been allegations that individuals have been bullied, pressured or harassed. There have been assertions that some members of FOA are reluctant to speak for fear of retribution.[19] Whether the claims of bullying, harassment and fear are true or false, real or

---

[19]The debtor has sued – if not every, then most – of the individuals who served as directors of FOA since 2009. This court dismissed the individual director defendants in a suit filed in this court because it lacked jurisdiction over the
(continued...)

imagined, the examiner should take them into account in conducting his investigation. The examiner has the right to have private interviews, subject to the Rules of Professional Conduct. The debtors are not entitled to prior notice of the private interviews, to be present or to cross-examine the interviewees.

The debtors' objections will be overruled. Nothing presented persuades the court that any restrictions or procedures should be imposed on the examiner or his investigation.

## Conclusion

This is a proper case for the appointment of an examiner to investigate the matters raised by the motion to approve a settlement agreement. The United States Trustee's motion for appointment of an examiner will be granted. The debtors' objection to the examiner conducting private interviews without notice to them, without them being present and without them having the ability to cross-examine is overruled as to private interviews with parties other than the debtors.

Alexandria, Virginia
August 22, 2013

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

copy electronically to:

Donald F. King
John T. Donelan
Philip J. Harvey
Joseph A. Guzinski
Stephen E. Leach
18693

---

[19](...continued)
claims. *Gordon Properties, LLC v. First Owners' Association of Forty-Six Hundred Condominium, Inc.,* Adv.Proc. 11-1020-RGM.