## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

In re:

GORDON PROPERTIES, LLC, and
CONDOMINIUM SERVICES, INC.,

      Debtors.

Case No. 09-18086-RGM
(Chapter 11)

GORDON PROPERTIES, LLC,

      Debtor,

v.

FIRST OWNERS' ASSOCIATION OF
FORTY SIX HUNDRED  CONDOMINIUM,
INC.,

      Creditor.

Contested Matter
Objection to Proof of Claim No. 2
(Docket Entry 99)

### MEMORANDUM OPINION

Gordon Properties, LLC successfully objected to the proof of claim filed by First Owner's Association of Forty Six Hundred Condominium, Inc. ("FOA").  It now seeks reimbursement of its attorney's fees expended in the matter.

### Basis for Attorney's Fees

The claim for attorney's fees arises under §55-79.53(A) of the Virginia Condominium Act which provides that the prevailing party in an action for enforcement of the condominium documents is entitled to its reasonable attorney's fees.  There was a divergence of opinion as to whether §55-79.53(A) is available in all suits involving alleged violations of condominium documents or only

1

those commenced by the unit owners association.  The Virginia Supreme Court recently held that

the comparable provision in the Virginia Property Owners' Association Act, Va.Code (1950)

§55-515(A), applies in all suits, whether commenced by the property owners association or the

property owner.  *Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 284 Va. 409, 427-428, 732

S.E.2d 690, 701-702 (2012).  The Virginia Supreme Court when it addresses this issue will most

likely find that the Condominium Act and the Property Owners' Association Act provisions, §55-

79.53(A) and §55-515(A), are identical, serve the same purpose and should be interpreted in the

same manner and hold that  attorney's fees may be awarded to the prevailing party whether the suit

was commenced by the unit owners association or the unit owner.

Gordon Properties successfully sought a determination that the condominium fees assessed

by FOA which it asserted in its proof of claim were improperly assessed.  Its attorney's fees incurred

in that effort are part of the relief permitted by §55-79.53(A).  While the better practice is to request

attorney's fees in a prayer for relief, the failure to do so is not fatal in federal court.  Fed.R.Civ.P.

54(c), which is incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7054(a), does

not require this. Instead, it provides that a final judgment "should grant the relief to which each party

is entitled, even if the party has not demanded that relief in its pleadings." Fed.R.Civ.P. 54(c).  The

claim for attorney's fees is properly before the court.

## Standard for Awarding Attorney's Fees

Virginia law sets the standards for awarding attorney's fees under Va.Code (1950) §55-

79.53(A).  Gordon Properties may only recover attorney's fees "on claims that (a) were brought to

enforce the Declaration and (b) they prevailed upon." *Manchester Oaks,*  284 Va. at 429, 732 S.E.2d

2

at 702 (applying Va.Code (1950) §55-515(A)).  It bears "the burden of establishing the amount of costs and fees arising from the breach of contract claim for which the statute entitles them to an award."  *Id.* (*citing Ulloa v. QSP, Inc.,* 271 Va. 72, 83, 624 S.E.2d 43, 50 (2006)).  The fees must be reasonable and necessary.  The Virginia Supreme Court stated:

> We set forth the factors to be considered when determining an award of attorneys' fees in *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 499 S.E.2d 829 (1998). They include, among other things, "the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate." *[Chawla]* at 623, 499 S.E.2d at 833.

*Manchester Oaks,* 284 Va. at 429-430, 732 S.E.2d at 703.

The Court of Appeals for the Fourth Circuit has adopted essentially the same test.  It stated:

> In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. *Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008). In deciding what constitutes a "reasonable" number of hours and rate, we have instructed that a district court's discretion should be guided by the following twelve factors:
>
>> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir.1978) (adopting twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)).

3

> After determining the lodestar figure, the " 'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.' " *Grissom,* 549 F.3d at 321 (quoting *Johnson v. City of Aiken,* 278 F.3d 333, 337 (4th Cir.2002)). Finally, "[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* (internal quotation marks and citation omitted).

*Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 243-244 (4th Cir. 2009).

## Discussion

Claims.  The court must first determine whether the claims asserted by Gordon Properties were within the statutory parameters of Va.Code (1950) §55-79.53(A) of enforcing the declaration and bylaws.  The proof of claim asserted a single claim for non-payment of condominium fees. Gordon Properties defended the asserted claim.  Its objection to the proof of claim listed eight issues, each in a separately numbered section or subsection.  It asserted that the assessments were not duly adopted; that FOA did not have the authority to levy retroactive assessments; that FOA could not assess some unit owners but not others; that FOA failed to credit it for over assessment on its other units;  that FOA had no authority to levy annual assessments on the restaurant unit;  that the assessments did not comply with the methodology set forth in the condominium instruments or in decisions of the Alexandria Circuit Court; that the assessments were barred by the Statute of Limitations, the Doctrine of Laches and waiver; and that Gordon Properties  had setoffs for improperly assessed user fees on single-user limited common elements, unauthorized off-site owner fees, and improper late fees.  All were defenses to the collection of the street-front unit assessments. The defenses fell within three categories:  the assessments were not authorized, were improperly calculated or were subject to setoffs against other improper fees previously paid.  As defenses to an

4

action to collect condominium assessments, all fall within the parameters of Va.Code (1950) §55-79.53(A).

Prevailing Party.  Gordon Properties is only entitled to recover its attorney's fees if it is the prevailing party.  Va.Code (1950) §55-79.53(A).  The prevailing party examination is made on a claim-by-claim basis.  It need not be successful on every action or motion in the case to recover attorney's fees.  *Chawla v. BurgerBusters, Inc.,* 255 Va. 616, 499 S.E.2d 829 (1998).  But, it can only recover its attorney's fees on its successful claims.  *Robinson,* 560 F.3d at 244; *Ulloa v. QSP, Inc.,* 271 Va. 72, 624 S.E.2d 43 (2006).  There is a distinction between succeeding on a claim and succeeding on every motion or action taken in prosecution or defense of a claim.  Gordon Properties may recover its attorney's fees for unsuccessful motions or actions when it is successful on the claim to which they apply, but not for any motion or action made or taken in an unsuccessful claim even if the motion or action was itself successful. The objection to proof of claim contains a single claim for relief, disallowance of FOA's proof of claim.  It does not seek additional relief.  FOA argues that Gordon Properties' defense of setoff is a separate claim.[1]  It is not.  It is a defense to FOA's claim to the extent that FOA's claim is allowed and to the extent that Gordon Properties has a setoff.  A setoff defense cannot result in an affirmative recovery by a debtor in an objection to a creditor's proof of claim.  *See Neal v. Golden Knights*, 1996 U.S. Dist. LEXIS 15442 (E.D.Va. 1996) at *9.

Reasonable and necessary.  The attorney's fees requested by Gordon Properties must be both reasonable and necessary.  *Ulloa* 271 Va. at 82, 624 S.E.2d at 49.  Both the federal courts and the state courts use the lodestar calculation method.  "In calculating an award of attorney's fees, a court

---

[1]Gordon Properties did not prevail on its defense of setoff.  If it were a separate claim, then all fees associated with the claim would be disallowed.

5

must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson,* 560 F.3d at 243.  The parties agree as to the reasonableness of the hourly rates charged and the accuracy of the time records.  They do not agree that all of the work was necessary or that the hours expended were reasonable.

Requested Fees.  Gordon Properties incurred $364,870 in attorney's fees in connection with its objection to FOA's $315,673.36 proof of claim and an attempted settlement.  The requested fees cover two principal actions: the litigation of the assessment and the settlement agreement negotiated by FOA and Gordon Properties which was denied approval by the court.  Gordon Properties seeks attorney's fees of $281,910.  This is composed of $198,950 for successfully objecting to the proof of claim and $82,960 for negotiating a settlement with FOA, the latter being one-half of all fees it incurred in the settlement process.  The total attorney's fees incurred with respect for negotiating the settlement was $165,920.

Fees for the Settlement Agreement.  FOA and Gordon Properties participated in mediation in the District Court and later in the Bankruptcy Court.  The District Court mediation did not result in a settlement.  The Bankruptcy Court mediation did.  Gordon Properties requested an award of its fees incurred in both mediations.  Both FOA and the United States Trustee objected to Gordon Properties being awarded its attorney's fees for work done in connection with negotiating the settlement.

The threshold question is whether Gordon Properties was the prevailing party in the settlement negotiations.  The bankruptcy court mediated settlement agreement was addressed previously by this court.  *In re Gordon Properties, LLC,* 2013 WL 5295246 (Bankr. E.D.Va.

6

Sept. 19, 2013). It was not approved because of the conflicts of interest of Gordon Properties.[2]

Gordon Properties was not the prevailing party with respect to the settlement because the settlement

was not approved by the court. The settlement efforts were distinct and separate from the claim

litigation and are analogous to a separate claim upon which it was unsuccessful.[3]

Even if attorney's fees could be awarded with respect to either mediation effort, there is no

basis to make an award. Gordon Properties incurred $165,920 in negotiating the settlement.[4] The

settlement was intended to be a global settlement, resolving all matters between the parties, not just

the condominium assessment matter. The settlement agreement dismissed all pending litigation and

appeals with prejudice. This included a suit in state court and an arbitration concerning the number

of seats that Gordon Properties and its related entities could hold on FOA's board of directors. This

was a very important issue to Gordon Properties. The court previously ruled that a non-natural entity

could hold only one seat on the board of directors. Gordon Properties appealed the decision to the

District Court where the appeal is now pending. The settlement agreement was conditioned upon

this court vacating that order. The settlement also resolved the $453,533.12 judgment in favor of

FOA against Condominium Services, Inc. ("CSI"), a wholly owned subsidiary of Gordon Properties.

The settlement agreement established the manner in which future assessments would be allocated

among the unit owners. The settlement agreement required FOA to not object and to vote in favor

---

[2]Gordon Properties held three of the seven seats on FOA's board of directors.

[3]This case presents several interesting questions. One is whether either party to the settlement agreement was the "prevailing party." A settlement by its very nature means that the parties reached a satisfactory resolution. The fees are sought here because the settlement was not approved by the court. This motion was resolved as a part of the settlement agreement and would not have been heard had the settlement agreement been approved.

[4]The court treats this as covering time expended in both the District Court and the Bankruptcy Court mediations.

7

of any chapter 11 plan that Gordon Properties might submit and to not object if it sought to dismiss the bankruptcy case.

Bryan Sells, the managing member of Gordon Properties, testified that, in his opinion (he was not qualified as an expert), 60 to 75 % of the time expended by his counsel during the settlement negotiations related to the condominium assessment matter. Gordon Properties, in its request for attorney's fees, suggested 50%. Supplement to Motion for Award of Attorneys' Fees as Prevailing Party ("Supplement") at 7. (Docket Entry 684). The court reviewed the time records for the mediation portion of the case and is unable to make any principled allocation of time among the various matters that were part of the settlement negotiations.[5] Almost all of the time entries refer to the negotiations or mediation generically. None specifically refers to negotiations or mediation of the assessment issue itself. Gordon Properties had the burden of establishing a *prima facie* case of reasonableness. *Chawla v. BurgerBusters,* 255 Va. at 623, 616, 499 S.E.2d at 833. It presented no expert testimony to assist the court in allocating the $165,920 attorney's fees incurred with respect to the settlement agreement among the various tasks and the court is unable to do so from the record.[6] All fees incurred with respect to the settlement negotiations and the effort to obtain court approval of the settlement agreement will be disallowed.

Assessment Litigation. The remaining claim for attorney's fees is for the litigation over the proof of claim. The attorney's fees requested total $198,950. Two law firms represented the debtor: Odin Feldman & Pittleman PC and Mercer Trigiani PC. Donald F. King at Odin Feldman was the

---

[5]The District Court mediation also involved matters other than the assessment.

[6]Mr. Sells' testimony did not assist the court. He lacked sufficient familiarity with the time records. His estimate appeared to be based on his observation of counsel or his participation in activity of only some of the recorded time. There was no reliable basis to extend his estimate to the entire time recorded.

lead counsel responsible for the case.  Mercer Trigiani assisted in condominium matters.  Gordon Properties sought to recover $195,370 of Odin Feldman's bill and $3,580 of Mercer Trigiani's bill. Gordon Properties submitted various pages of the law firms' bills, most of which were previously filed with the court as part of their fee applications.[7]  The time it sought to recover for the assessment litigation was highlighted in yellow and no other time was considered as part of this motion.

The court's docket reflects that FOA filed its proof of claim on January 29, 2010.  Gordon Properties filed its objection on September 27, 2010.[8]  The principal activities were cross-motions for summary judgment, motions to exclude expert witnesses and to compel the filing of expert reports, and the trial.  This was not the first time that the parties had litigated the assessment issue. It was previously raised in state court.  The state court dismissed the claim for the assessment on the basis that it had not been properly levied.  FOA immediately properly levied the assessment for which it filed its proof of claim.  The state court adjudicated various other matters.

FOA filed a motion for partial summary judgment on November 11, 2010.  It asserted that various defenses were barred by *res judicata* arising from the prior state court litigation.  The first significant reference to the prior state court proceeding in Odin Feldman's time records was on December 28, 2010, when a deposition from that suit was reviewed.  Review of the prior state court proceeding continued for the next week or two.  Gordon Properties filed a cross-motion for summary

---

[7]All fee applications to date have been interim fee applications and are subject to final approval.  This case appears to be an equity case, that is, after all claims are determined and paid, there should be substantial equity remaining for the members of Gordon Properties.  The interim fee applications are not relevant to the matter under consideration. Gordon Properties, which is effectively paying its attorneys out of its equity, has not objected to any of the interim applications.  *See Gold v. Guberman (In re Computer Learning Centers, Inc.),* 407 F.3d 656 (4th Cir. 2005); *Grausz v. Englander,* 321 F.3d 467 (4th Cir. 2003).

[8]The other significant claim was filed by Stites & Harrison on October 29, 2009.  Gordon Properties filed its objection to the claim on September 18, 2013.  The claim was for $237,755.40.

Document    Page 10 of 15

judgment. FOA's motion was substantially granted on grounds of *res judicata* and collateral estoppel. Gordon Properties' motion was denied. *In re Gordon Properties, LLC,* 2011 WL 2976785, 2011 Bankr. LEXIS 2863, (Bankr.E.D.Va. July 21, 2011).[9]

The trial was completed on February 27, 2012. The last post-trial briefs were submitted on April 2, 2012. The order disallowing the proof of claim was entered on August 23, 2012. At the trial, the principal witnesses were the two experts. Both FOA and Gordon Properties presented their expert witness who testified as to how the assessment should be allocated among the unit owners and, how it was allocated among the unit owners. The court found that FOA's assessment was not properly allocated. FOA had no evidence to show what Gordon Properties' street-front condominium fee should have been if assessed under a proper allocation method. The proof of claim was disallowed.[10] *In re Gordon Properties, LLC,* 2012 WL 3644788, 2012 Bankr. LEXIS 3868 (Bankr.E.D.Va. Aug. 23, 2012). FOA filed a notice of appeal on September 6, 2012.

The time expended on the defenses addressed by FOA's motion for partial summary judgment will not be allowed. It was unnecessary because the issues had been previously litigated in the state court. They should not have been raised again.

The court examined all of the remaining time records. Some of the time entries include time expended on two or more matters, one of which was the assessment issue. No evidence was

---

[9]Gordon Properties filed a notice of appeal but withdrew it.

[10]While the court could analyze and allocate a few lines of the budget, Gordon Properties had paid the original assessment which was made in accordance with an allocation methodology which Gordon Properties apparently agreed. Without more evidence, the court could not determine whether that amount was too high, too low or just right, and, thus, whether more or less was still due. Gordon Properties did not seek a refund or an adjustment of the amount previously paid.

10

presented to allocate the time expended among the issues  addressed. Those time entries will not be allowed.[11]

There are time entries where the description is insufficient to determine clearly which matter in the bankruptcy case is being addressed.  The time entries are ambiguous as to the issues being addressed.  They cannot be allowed.

The greatest difficulty with this motion for attorney's fees is determining the reasonable number of hours expended to be used in the lodestar calculation.  The attorney's fee in relation to the amount in controversy is additional cause for concern about the necessity of the work performed. *Manchester Oaks*, 284 Va. at 429-430, 732 S.E.2d at 703; *Robinson*, 560 F.3d at 243-44 (factor 8, "The amount in controversy and the results obtained"). The total of all the time entries remaining after excluding those described above but including the ambiguous ones is $130,790 which is about 375 hours of work.

The central issue in the assessment case was how to allocate the annual budget to each condominium unit in order to arrive at a monthly condominium fee.  The idea behind allocating condominium fees is relatively straight-forward, but the execution at this condominium is very detailed.  The process is set out in Va.Code (1950) §55-79.83.  Expenses relating to limited common elements are allocated to the units to which the limited common elements appertain.  Expenses relating to the general common elements or to the management of the condominium as a whole, are

---

[11]For example, one of the first time entries states: "Review of claim by Stites and FOA."  Supplement, Ex. 1 at 1 (2/3/10). Others are, e.g., 12/2/10 ("FOA claim objections and new adversary proceeding."); 1/11/11 ("Attend court re: hearing on FOA motion to dismiss; status hearing on FOA objection, voting agreement and hearing on Mercer fee application."); 11/9/10 ("Attend court re: preliminary hearing on claim objection and status on other pending matters."); 4/12/11 ("Attend court re: hearing on borrowing motion and status hearing on claim objection."); 5/10/11 ("Communicate with Client re: status, issues and strategy on various pending matters (Claim, adversary)."); 5/24/11 ("Attend court re: status hearings on claim objection, injunction proceeding, motion for substantive consolidation."). *Id*. Exs. 1-3.

11

allocated to all the units. This condominium is unusual. Virtually everything is a part of a unit or a limited common element. There are several types of limited common elements. The analysis and allocation should be a two-dimensional spreadsheet with each type of limited common element, the general common elements and the general common expenses spread across the columns at the top and the budget line items listed on the lines going down. Each line item expense must be allocated to one or more of the columns. In some instances, an expense must be disaggregated – that is, broken down into its component parts – because the component parts are allocated to different columns. *In re Gordon Properties,* 2012 WL 3644788 at *2-5; 2012 Bankr. LEXIS 3868 at *4-15 (explaining the allotment of the common elements among the units). While tedious, it takes more of the talents of an accountant than an attorney. The time records show lots of work on legal matters and time with Gordon Properties' expert, presumably to both understand the process and prepare for trial. The court is satisfied as to some of the time expended, but has no basis to find that all of the time expended was necessary to the prosecution of the objection to the proof of claim.

The court is familiar with the in-court work in this case – the pleadings, the briefs and the trial– and is aware that work must be performed out-of-court to support the in-court work. The court is well-experienced in reviewing fee applications.[12] Every professional must file a fee application before he can be compensated. *Bank of New York Melon Trust Co., N.A. v. Tysons Financial, LLC (In re Botero-Paramo),* 483 Fed.Appx. 779,787-789 (4th Cir. 2012) ("[W]e find that bankruptcy courts are, in certain circumstances, particularly qualified to determine the reasonableness of fees based on their own expertise."). In many cases, the court can review the time records, examine the

---

[12]Every professional employed by a trustee or a debtor in a chapter 11 case must file a fee application before he can be compensated.

court's docket and recall the hearing held before it.  Based on such a review, the court can readily

determine whether the fees requested were necessary and reasonable.  This, however, is not such a

case.  Many issues were presented, only one of which was within the scope of Va.Code (1950) §55-

79.53(A).  The issues were hotly contested.  They overlapped in time and effort.  The court is not

in the same position in this case as in most cases of being able to evaluate the necessity and

reasonableness of the time counsel expended.  The complexity resulted in some of the problems

discussed above, such as ambiguity and single time entries encompassing multiple tasks.  These

problems prevent the court from determining the portion of those time entries that fall within the

scope of scope of §55-79.53(A).   The burden was on Gordon Properties to show this.

The court notes the absence of an expert witness.  *Id.* at 779 (referring to an award of

attorney's fees that "lacked the usual expert testimony").  An expert would evaluate the time entries,

associate them with the actual work done and be able to offer an opinion as to the reasonableness

and necessity of the work done.  In *In re Jackson,* 442 B.R. 469 (Bankr. E.D.Va 2010), the credit

union sought to recover its attorney's fees from the debtor.  The credit union did not have an expert

witness.  The court relied on the debtor's expert witness to establish the proper fee.  In *Ulloa,* there

was  supporting expert opinion as to the services involved.  *Ulloa*, 271 Va. at 79; 624 S.E.2d at 47-

48.

The court reviewed all of the time entries.  The court is in a position to review the time

entries relating to the expert witnesses, both FOA's expert and Gordon Properties' expert and make

a reasoned determination as to those time records.  The time expended totals $34,850.  The case

revolved around the experts. The time expended in this regard, both in preparing its own expert and

deposing FOA's expert, was necessary and, given the complexity of their calculations, reasonable. This time will be allowed.

The court recognizes that most of an attorney's time is spent in preparing for court, not in court. In most cases the court is able to reasonably determine that the out-of-court time is reasonably related to the pleadings filed and the court appearances. However, as cases involve more issues and extend over longer periods of time with the various issues themselves overlapping in time – and in this case where only a portion of the time expended in the case is within §55-79.53(A) – the court's ability to reasonably determine from the time records, the dockets and the hearings whether the reported time is within §55-79.53(A) and both necessary and reasonable diminishes. While the court can reasonably identify a large number of time records that relate to issues within the parameters of the statute and can reasonably determine a minimum amount of time that was reasonably expended on the assessment litigation, more cannot be allowed without expert testimony showing the reasonableness of the time expended. Most of the time records themselves – even considering the court's docket and the hearings held – are not sufficient to accomplish this. The court is in a position to make a reasoned determination as to some of the time records, generally those for the preparation of the trial and the trial itself. As to the rest, Gordon Properties had the burden of establishing a *prima facie* case of reasonableness. While it satisfied this as to a portion of its time expended, it did not satisfy its burden beyond the minimum amount that the court will award.

## Conclusion

The court considered the factors set out in *Manchester Oaks* and *Robinson*. Based on those factors, the record before the court and the absence of expert testimony, the court will award $25,000

14

for attorney's fees for time other than time dealing with the expert witnesses and $34,850 for the

time spent on the expert testimony for a total of $59,850.

Alexandria, Virginia
September 26, 2013

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

copies to:

Donald F. King
Bradley Jones
Michael Dingman

18775